194

**MILLER, et al v. TAX ASSESSOR, et al.**
Nos. 5556, 5630, 5806, 86046, 86047.
Circuit Court, Pinellas County.
October 18, 1968.

Edward C. Tietig, Miami, for plaintiffs.

Daniel N. Martin, County Attorney, James W. Vance, Assistant County Attorney, for defendants.

B. J. DRIVER, Circuit Judge.

This cause came on to be tried to the court sitting without a jury.

The properties involved in the litigation have almost identical physical and economic characteristics, and in addition the issues are substantially the same in each of the cases — it was therefore determined and ordered that the causes be consolidated for the purpose of trial.

Plaintiffs, by their suits, contest the validity of the ad valorem tax assessments levied against their properties for the year 1966 and 1967. The fundamental issues are, as posed by the plaintiffs —

That plaintiffs' properties were illegally assessed by the tax assessor of Pinellas County, resulting in assessments in excess of the fair market value of their properties; and secondly, that their properties were subjected to an unfair and illegal tax burden because the assessor systematically assessed properties other than plaintiffs' properties on a percentage which amounted to less than 100% of the fair market values of the other properties which compose the tax roll.

The court had submitted to it testimony of various witnesses considered to be experts in the field of real estate appraisal and assessments. Additionally, books, records, and documents pertaining to assessment standards as required by the laws of the state were introduced along with profit and loss statements and financial data concerning the income and expenses for each of plaintiffs' apartments. The court has carefully considered the testimony of the parties, including that of the expert appraisers, along with the documentary proof, and after applying the criteria that a trier of fact is required to apply to the testimony of live witnesses, and being otherwise advised in the premises, the court makes the following findings of fact and conclusions of law —

That this court has jurisdiction of the parties and of the subject matter of the above styled causes, and that plaintiffs have exhausted their administrative remedies and have standing to bring this suit.

Section 193.021, Florida Statutes, controls the acts of the tax assessor of Pinellas County in assessing the various plaintiffs' properties, and delineates the guide lines to be followed by him. The pronouncements in Walter v. Schuler, 176 So.2d 81, are determinative of what "fair market value" or "just valuation" is.

It is the plaintiffs' contention that the tax assessor limited his appraisal to the so-called "bricks and mortar" or replaceable value test, and failed to follow the other prescribed criteria required by §193.021 generally, and specifically failed to take into account comparable sales and income capitalization.

The second arrow from plaintiffs' quiver which they launch at the tax roll is that the tax assessor systematically and methodically without resort to his own judgment and discrimination took the assessment cards prepared by Hunnicutt & Associates when the latter undertook to re-appraise all the properties in Pinellas County for tax purposes and reduced Hunnicutt's figures by 25%, thereby placing the other properties in the county on the tax roll at 75% of their fair market value. The defendant tax assessor through his testimony and buttressed by argument of counsel contends that all of the criteria which he ought to follow in making assessments were

followed, and that in those cases where the Hunnicutt appraisal had been reduced or modified it was made necessary by factors which Hunnicutt had not considered and which he deemed appropriate and applied in his discretion.

It is not to be doubted but that the testimony of plaintiffs' expert witnesses and that of the tax assessor and his witnesses is in conflict.

Plaintiffs' witnesses in their expertise were of the opinion that in determining the "fair market value" for high-rise apartment buildings the income capitalization method is the most satisfactory and accurate. Defendants' witnesses acknowledge the validity of the income capitalization method, but only as one facet of the problem. There is conflict in the factors followed by the appraisers for the respective parties in the calculations used in arriving at income capitalization. Plaintiffs' appraisers took the position that the figures used in calculating value should be "stabilized figures", which are figures which average out over a span of years and take into account income and expenses for an extended period of time, rather than a year by year method of consideration of profit and loss which it is contended defendants' appraisers used.

It is to be seen without further obfuscation of this order by reciting contending and conflicting theories and evidence that what plaintiff complains of is the assessor's method of arriving at the fair market value of the properties involved. The assessment comes to this court with a presumption of correctness. Folsom v. Bank of Greenwood, (Fla. 1929) 120 So. 317. To overcome this presumption the proof must be clear and convincing that the tax assessor has departed so far from the charted path marked by assessing standards that it amounts to an abuse of discretion. Louisville & N. R. Co. v. Amos, (Fla. 1929) 123 So. 745.

It may well be that other methods of arriving at fair market value could have been followed by the tax assessor and which may even be more accurate. This court, however, cannot substitute its judgment for that of the tax assessor, whose discretion is broad. Defendant Haines is the tax assessor and where the evidence is conflicting as to which of two or more methods is desirable, his judgment cannot be disturbed if it can be arguably contended that he abided by the criteria set forth in §193.021. We cannot find as a matter of law that the assessor has acted arbitrarily in the cases before the bar and his judgment must stand. R. H. James, Inc. v. Anderson, (Fla. App. 1964) 165 So.2d 829.

Turning now to plaintiffs' second attack on the assessment roll wherein it is contended there was a systematic and methodical failure to assess all other properties in the county except plaintiffs'

at fair market value, it must again be concluded that while such a conclusion could be reached from plaintiffs' evidence, a contrary conclusion can be reached if one follows and believes the testimony of the defendant.

The prime weapon used by plaintiffs in attempting to show a systematic under-appraisal was a comparison of the assessed valuations with the sale prices in certain areas of the county. These figures do demonstrate consistency on the part of the tax assessor in reducing the Hunnicutt appraisals and in frequent instances of arriving at assessments which turned out to be less than the property in question sold for. A comparison of sale prices to assessment is but one factor to be considered. The tax assessor undertook to explain the dicrepancy in a variety of ways, including the fact that one must consider the amounts of the mortgages involved, the improvements, and location of properties, esthetic valuations, and in other ways. This court again cannot say that the tax assessor's methods amount to an indiscriminate substitution of a fixed figure of 75% of Hunnicutt's appraisal so systematically followed as to justify plaintiffs' contention.

Wherefore it is order and adjudged — (1) That the ad valorem tax assessments against plaintiffs' properties for the years 1966 and 1967 are valid. (2) That there has been no systematic failure on the part of the tax assessor to assess all properties on the tax rolls for the years 1966 and 1967 at less than 100% of the fair market value of said properties. (3) That plaintiffs' properties do not have an unfair or illegal tax burden assessed against them. (4) That the court finds for the defendants and against the plaintiffs on plaintiffs' suits and assesses costs against the plaintiffs.